IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MIDWEST MOTOR SUPPLY CO., INC., d/b/a KIMBALL MIDWEST, | : | |
| | : | Case No. 2:05-cv-01135 |
| Plaintiff | | |
| | : | Judge Frost |
| v. | | |
| | : | Magistrate Judge Abel |
| RICHARD CATALDO, | | |
| | : | |
| Defendant. | | |
| | : | |

## Report and Recommendation

This matter is before the Magistrate Judge on Plaintiff's January 4, 2006 Motion to Remand (Doc. #5). Defendant Richard Cataldo removed this action from the Court of Common Pleas for Franklin County, Ohio. Plaintiff Kimball Midwest contends that removal is improper because Mr. Cataldo has not satisfied the amount in controversy requirement. For the reasons that follow, Kimball Midwest's Motion to Remand is denied.

**I.   FACTS**

On May 25, 2005, Kimball Midwest filed this action against Mr. Cataldo in the Court of Common Pleas for Franklin County, Ohio. It alleged that Cataldo was employed by Kimball Midwest between July 1997 and Mach 2005 as a sales representative. On March 3, 2005, Cataldo began employment with Pacific Suppliers Company ("PSC"), a direct competitor of Kimball Midwest. Complaint, ¶¶ 9-10. The complaint

further alleged that while employed with Kimball Midwest, Cataldo diverted orders and business to PSC. Further, Cataldo "retained, used and disclosed pricing information, customer lists, contact information, and other proprietary information" of Kimball Midwest. *Id.*, ¶ 11. After beginning work for PSC, Cataldo continued to call on, solicit, and make sales to Kimball Midwest's customers. *Id.*, ¶ 12. Finally, it alleges that Cataldo disclosed Kimball Midwest's trade secrets and confidential business information to PSC. *Id.*, ¶ 13. The complaint alleged five separate causes of action involving the alleged violation of a non-competition clause by Mr. Cataldo, including (1) breach of contract, (2) tortious interference with business relationships and economic advantage, (3) breach of fiduciary duty and duty of loyalty, (4) conversion, and (5) misappropriation of trade secrets.

As to First Cause of Action (Breach of Contract), the complaint alleges that "Kimball Midwest has been damaged by the conduct of Defendant in breach of his Employment Agreement, as of the filing of this Complaint, in an aggregate amount that exceeds $25,000 but is less than $75,000." *Id.*, ¶ 16. As to the remaining causes of action, the complaint alleges that ""Kimball Midwest has been damaged by Defendant's wrongful conduct and actions, as of the filing of this Complaint, in an aggregate amount that exceeds $25,000 but is less than $75,000." *Id.*, ¶¶ 22, 26, 29, and 33. The Prayer for Relief asks for enforcement of the employment agreement for two years, *Id.*, Prayer for Relief, ¶ 1; and it seeks a permanent injunction prohibiting Cataldo from violating the Employment Agreement; retaining, using and/or disclosing trade secrets or other confidential information; contacting, soliciting, selling or otherwise doing business with any of the

customers he formerly serviced for Kimball Midwest. *Id.*, Prayer for Relief, ¶ 2. It further seeks an order compelling Cataldo to pay Kimball Midwest "all moneys received or earned and other damages suffered" by it as a result of his wrongful conduct. *Id.*, Prayer for Relief, ¶ 3. It seeks damages "that at the present time in aggregate are greater than $25,000 but less than $75,000 . . . for loss occasioned by Defendant's intentional interference with Plaintiff's business relationship with its customers, breaches of contracts, misappropriation of trade secrets, unfair competition and any unjust enrichment. . . ." *Id.*, Prayer for Relief, ¶ 4. It also seeks punitive damages "for Defendant's willful and malicious interference with business relations and contracts, and misappropriation of confidential information or trade secrets, with a total aggregate amount of damages being less than $75,000. . . ." *Id.*, Prayer for Relief, ¶ 5. It seeks "attorneys' fees and costs for Defendant's willful and malicious interference with business relations, with a total aggregate of damages, punitive damages, costs and attorneys' fees being less than $75,000. . . ." *Id.*, Prayer for Relief, ¶ 6. Finally it seeks an injunction "against Defendant's wrongful conduct" and "such other relief as the Court deems appropriate." *Id.*, Prayer for Relief, ¶¶ 7 and 8.

Defendant Cataldo filed a Notice of Removal to this Court on December 19, 2005, claiming diversity jurisdiction existed between the parties. On January 4, 2005, Kimball Midwest filed a Motion to Remand and Request for Fees and Expenses, claiming that Mr. Cataldo did not provide any evidentiary support for his contention that the amount in controversy exceeded $75,000.[1]

---

[1] The parties do not dispute the existence of diversity of citizenship.

II.     DISCUSSION

In removing this case, Mr. Cataldo asserted federal subject matter jurisdiction on the basis of diversity of citizenship and satisfaction of the amount in controversy requirement. Generally, a defendant may remove a civil action brought in state court to federal court if the action could have been brought there originally. *See* 28 U.S.C. §1441(a); *Gafford v. General Electric Company*, 997 F.2d 150, 155 (6th Cir. 1993). A federal district court has original jurisdiction over, *inter alia*, any civil action "where the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between--(1) citizens of different States." 28 U.S.C. §1332(a); *see also Gafford*, 997 F.2d at 155. A defendant desiring to remove a case has the burden of proving the diversity jurisdiction requirements. *Gafford*, 997 F.2d at 155.

"[W]here the plaintiff seeks to recover some unspecified amount that is not self-evidently greater or less than the federal amount-in-controversy requirement," the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds $75,000.00. *Id*. at 158. The defendant must set forth evidence showing that it is "more likely than not" that the plaintiff's claims meet the federal amount in controversy requirement. *Id*. The defendant may satisfy this burden if a fair reading of the complaint and other evidence of record shows that the amount in controversy exceeds $75,000. *See Hayes v. Equitable Energy Resources Co.*, 266 F.3d 560, 573 (6th Cir. 2001).

Here Defendant Cataldo argues that although Kimball Midwest's complaint clearly states that it is seeking monetary damages that, in the aggregate, are less than

$75,000, it also seeks both preliminary and permanent injunctive relief that should be added to the value of a suit for jurisdictional purposes. *See Pennsylvania R. Co. v. City of Girard*, 210 F.2d 437, 439 (6th Cir. 1954). The value of injunctive relief is the economic value of the legal rights at issue by the assertion of the claims. *See Hunt v. Washington Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977); *Goldsmith v. Sutherland*, 426 F.2d 1395, 1398 (6th Cir. 1970). The "focus is on the economic value of the rights [the plaintiff] seeks to protect." *Buckeye Recyclers v. CHEP USA*, 228 F. Supp. 2d 818 (S.D. Ohio 2002). The question is whether a fair reading of the complaint and other evidence of record shows that the value of the injunctive relief added to the monetary damages requested exceeds $75,000.

In a nearly identical case involving Kimball Midwest and another former employee, the district court held "that the compensatory damages claim and the injunctive relief claim are essentially an either/or remedy[]" and remanded that case back to the state court due to failure to meet the jurisdictional amount for diversity jurisdiction. *Midwest Motor Supply Co., Inc. v. Addis*, No. 2:05 CV 0733, 2006 WL 181990, at *4-5 (S.D. Ohio Jan. 23, 2006). Both in *Addis* and in this case, the complaints clearly stated that the plaintiff seeks both monetary damages and injunctive relief. (*See* Compl., Prayer for Relief; *see also* Compl., Nature of the Case.)

When determining whether the total damages sought exceed $75,000, the court the value of injunctive relief is the economic value of the legal rights asserted. *See Hunt v. Washington Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977); *Goldsmith v. Sutherland*, 426 F.2d 1395, 1398 (6th Cir. 1970). The "focus is on the economic value of the rights [the

plaintiff] seeks to protect." *Buckeye Recyclers v. CHEP USA*, 228 F. Supp. 2d 818 (S.D. Ohio 2002). A noncompetition clause has economic value. *Great Lakes Spice Co. v. GB Seasonings, Inc.*, No. 05-70387, 2005 WL1028177 (E.D. Mich. Apr. 26, 2005). The question is whether a fair reading of the complaint and other evidence of record shows that the value of the injunctive relief added to the monetary damages requested exceeds $75,000.

Here Defendant relies entirely on the allegations in the complaint. There has been no discovery, and neither party has submitted affidavits about the damages at issue. As in *Addis*, it appears from a reading of the complaint that Kimball Midwest's claims for economic damages and its claims for injunctive relief are essentially the same. A plaintiff is not entitled to recover "double damages." If the noncompete is enforced for two years, then there would likely be no economic damages because Kimball Midwest would obtain the full value of the employment agreement by enforcement of the noncompete. While there are possibly other compensatory damages that would not be included within the economic value of an injunction enforcing the employment agreement, what those damages might be and their value is entirely speculative on the present record. Defendant has offered no evidence regarding those damages; consequently, he has not met his burden of proving by a preponderance of the evidence that more than $75,000 is in controversy.

### III.  CONCLUSION

For the reasons set out above, the Magistrate Judge RECOMMENDS that Kim-

ball Midwest's January 4, 2006 motion to remand (Doc. #5) be GRANTED.

If any party objects to this Report and Recommendation, that party may, within ten (10) days, file and serve on all parties written objections, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *Thomas v. Arn*, 474 U.S. 140, 150-52 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also, Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).

                                                    s/Mark R. Abel
                                                    United States Magistrate Judge